Case number 15-3291 and 15-3555 State of Tennessee, State of North Carolina v. Federal Communications Commission et al. Oral argument not to exceed 15 minutes which will be shared by the petitioners and 15 minutes for the respondents. Mr. Joshua Turner and Mr. John Madry will be sharing time for the petitioners. Good morning, Your Honor. May it please the Court, Joshua Turner on behalf of Petitioner State of Tennessee. I'd like to introduce the Attorney General for the State of Tennessee, Herbert Slatery, who will be here today in the courtroom. And I'll be sharing time with North Carolina, who's also here. And I'd like to reserve three minutes for rebuttal. You don't have to make a formal request. The case before this Court is not about telecommunications policy or the merits of municipal broadband. This case turns, as did the case in Nixon, on an antecedent inquiry. Whether and how the federal government can intercede between a state and its municipal subdivisions. The FCC claims the unilateral right to expand the service territory of a state agency of the State of Tennessee. Despite the fact that the state legislature has specifically withheld that authority from that agency. This position is so remarkable that DOJ isn't even inclined to support it. And it must be overturned for at least three reasons. First, it violates Tennessee's core state sovereignty. Second, even if the federal government could regulate in this area, binding Supreme Court precedent requires that there be a plain statement of congressional intent before it can do so, and there is none here. Third, and finally, the sole statute on which the FCC bases this order, Section 706 of the Telecommunications Act, actually doesn't confer any authority on the agency at all. I'll address each of these arguments in turn. The federal government has no power to dictate the way in which states organize themselves. This is a bedrock principle of state sovereignty. Since the dawn of the republic, courts have held that states have absolute discretion to order themselves as they see fit. There's no dispute here that EPB is an arm of the state government. There's no dispute that the authority that EPB has comes from the state. As this court set instills, the imperative of state sovereignty forbids the federal government from displacing the state's ability to structure its own subdivisions. But that's precisely what the FCC is doing here. It's coming in and displacing Tennessee's ability to dictate where and how service is provided by one of the arms of the state. When you say how service is provided, I mean, would you say it's unconstitutional for them to regulate, for instance, broad bandwidth or frequency of radio stations or something like that that's done by a political subdivision? No, Your Honor. I think that the… So you've stated it too broadly. You said how. Well, I… How they do it might include what frequencies they use, right? Correct. Correct, Your Honor. There is a limiting principle, and the limiting principle is when the FCC attempts to tell the state, when the FCC attempts to affect those incidences of sovereignty that are core state sovereignty, and you see this in Gregory and you see this in Nixon, the Supreme Court discussing this line and saying there are some things about being a state that are sacrosanct, and the state has the ability to define those things without regard to federal law. That's the principle of federalism. You may be right, Your Honor, that there are some… Some. I mean, if a state, for instance, has a state radio station, it still has to comply with the frequency regulations of the FCC. Correct. Correct. And then… Why isn't that fundamental to what a state does? It's not because it's communications policy, right? Well, if… and this is, I think, a strongman of the FCC created in Pittsburgh, right? Yes, the FCC… Sure. No, and Your Honor, I appreciate that. The line here is an important one, because we absolutely are not saying that states are immune from generally applicable regulations that apply to, you know, whatever… So how do we know whether it's something that's in here, in state structure, versus something that's communications policy? Well, I think when you talk about defining what the authority of subdivisions are, that is a core area of state sovereignty. And that's the kind of thing that, if you look at Gregory, I think Gregory sort of lays this out. Gregory says, if it's something that is a core area of state sovereignty, that's an area where you need to be very careful and where you need to be sure that Congress wanted to authorize the federal government to get in between the state and its subdivision. And so there are hard cases. This is not a hard case, because in this case, it's all about the territory in which you provide service. It's all about what the actual service territory is and the way in which the state defines which subdivisions are responsible for service in which parts of the state. And certainly, one of the core areas of state sovereignty is to be allowed to divide the state up amongst various different subdivisions. And say, in this subdivision, we want… In this geographic area, we want this subdivision to provide service. In this geographic area, we want this other subdivision to provide service. And we don't want the two of them providing service across lines, because that's inefficient. And as the dissent in this case… But if the service that they're providing is one that's also provided by private entities, it starts to look more like they're regulating Congress and not regulating state authority or subdivision authority. Well, and, Your Honor, I think that's an excellent point.  This isn't a broad rule that applies to everyone. The FCC is not saying if you want to enter broadband, you have to be unfettered in your provision of service and you can't be geographically limited, whether you're private or public. It's saying public entities have a different rule. Public entities can't limit themselves in terms of where they provide broadband service. Public entities are subject to a rule that's different than Google. If Google wants to provide service only in Nashville, if Google's board says to Google, don't invest any money beyond Nashville, Google's free to do that. There's no FCC rule for that. I just don't understand what the issue here is. Sure. I thought that what the FCC did was tell Tennessee and North Carolina that they can't restrict the service provided, not that any provider has to – that the provider themselves can't limit their service area. Well, but the key point is that because the EPP is an arm of Tennessee state government, what the FCC is doing is saying to Tennessee, you can't restrict yourself. You can't decide to limit yourself when you invest in broadband. If you invest in broadband, you have to invest in broadband everywhere throughout the state. My point is that no similar rule applies to private areas. A similar rule in the private area would be this decision has to be made by the board rather than the committee or by the director rather than the chief of staff of the company. Right. The company's structure. Exactly. In fact, I think that emphasizes just how strange this rule is to put yourself in between what's essentially the executive and the operational units of an organization, right? I mean, that's what the FCC is doing here. And I see I'm out of time. I don't want to eat into my colleagues' time. May it please the court. I'm John Maddrey, Solicitor General for the state of North Carolina. The FCC order here intrudes upon and prides North Carolina of its sovereign power over its political subdivisions and specifically the core sovereign function of defining and establishing the boundaries of powers exercisable by its counties, cities, and towns. This is not something that is incidental to the state of North Carolina, but instead is rooted in the constitution of the state as a basic fundamental power to establish political subdivisions, regulate them, and if appropriate, disestablish them. There is nothing in this statutory enactment here that satisfies the requirement of a plain statement allowing preemption of state control over here, the communication services provided by the municipality. Only if you assume a broad authority to preempt that would have to be limited by the FCC. Can you adopt the FCC's argument here and assume that there's some ambiguity so that they can find an implied intent to authorize preemption? That runs afoul of U.S. Supreme Court decisions in Gregory and Nixon. Are you saying that it doesn't grant the authority to preempt state laws regulating its own municipalities or are you saying that it doesn't grant the authority to preempt at all regulation? If you were regulating private broadband providers, does 706 preempt that? Your Honor, that's a different question. I believe the precise question here is whether there is authority for the FCC to preempt a state law that is related to its regulation of political subdivisions within that state. Here, the reasons for the state taking the action that it has are set forth in the North Carolina legislation. But they really are beside the point once you understand that the definition of the existence of and the powers granted to a municipality are wholly within the purview of the North Carolina General Assembly. What if the North Carolina legislature decides that broadband is kind of a bad thing and we ought to limit it whenever we can? And so even though we have limited, we have permitted some states' entities, some political subdivisions to do it, we want to slow that down. And so we pass things that make it more difficult for the people that we have control over, our political subdivisions, to provide broadband. Isn't that directly contrary? Would that relate to, if they did that, if they were candid about doing that, I'm not saying that's what they did, but hypothetically speaking, if a state did that, would that violate the, it seems to be pretty clearly contrary to Congress' purpose, right? Your Honor, that would establish a clear policy distinction between the federal act and the state act. And that might warrant preemption if you had something like that? If Congress expressly granted a voucher. Without that clear statement, a mere policy… It's obviously clear that they don't want the legislature to do that, isn't it? Well, certainly there is a, if you say as the current provision that we encourage the full and broad provision of services and to take steps to stop things that stand in the way of that. Well, and that's the question of where does that broad policy pronouncement turn into an override of… Well, I understand that. It doesn't adequately provide the tool you could ask. But I thought you were suggesting that it was constitutionally beyond the power to do that. If I did, I misspoke, Your Honor. I would say that Congress needs to be expressed and explicit in any such intent to override, and that's the clear thrust of the Gregory and the Nason cases. But the reason stated in our brief, we would encourage this court to reverse the preemption portion of the FCC order, identifying specific statutory provisions in paragraph 181 and reinstate North Carolina law and legislation in its entirety. Thank you. Good morning, Your Honors. Matthew Dunn for the FCC. Judge Rogers asked a question about how we tell the difference between whether a law grants authority or how an entity may provide service. I would like to start there. I think if we look at the specific laws in question, it's an adjudication about just two laws. We can see that what these laws do is regulate competition in the interstate market. They're not about granting or withholding authority. They're about how an entity that may provide broadband actually does so. So in Tennessee, for example, as we explained in our brief, a city may provide broadband within its certain limits. It can also build, almost statewide, a fiber network to provide telecommunications, that is voice service. It simply cannot use that network that it is authorized to provide to compete with and combat broadband providers. So such a scheme does not in any way safeguard the public fisc that the city can build a network. It also doesn't, for example, arbitrate between competing political subdivisions, which is a purpose that my friend Mr. Walker alluded to. Instead, all it does is regulate competition. So if the network is already there, and you're saying the city can provide some broadband, it just can't provide broadband on that network. I think the purpose and effect of that is only to regulate competition. So what if a city doesn't want another city coming in and providing broadband? Right. So in this case, I will address that. I just want to first emphasize that it's not the case in the surrounding areas, which are digital deserts, are important. So there's right now no provision that would present a new issue. It may be that, for example, a state could easily pass a requirement that a city can only go in when invited. And in fact, my understanding is that just this week in Tennessee, a bill was defeated that would have allowed just that. It would have allowed cities to provide outside of their electrical service territory, but the city into which they would provide service would have a say in whether or not they could come. That bill was defeated. Now, if a bill like that were before the SEC, it might very well present a different question. In North Carolina, so we're talking about Tennessee. If we could talk a little bit about the North Carolina bill and how that works. Versus not to belabor this, which we discuss sometimes in our brief, but this is referred to as the level playing field bill. That's the shorthand. The longhand is an act to regulate local government competition with private business. And the bill's sponsor described the bill that way in comments to the SEC. So the proceeding below said the purpose of this is to create a level playing field. That is not about whether or not, that's not about the whether question. It's about the how question. How a city may compete once it can compete. I think distinguishing between whether and how is kind of difficult and abstract and kind of gets into what the state legislature was really about. I think that's a hard place to find a distinction. I wonder if a distinction might be better. Is this something that regulated parties are allowed to do or is it something that regulated parties are required to do? It's kind of an easy question. For instance, if you had a private entity like – it's easier for me to understand radio than broadband. I guess there are some, but let's say you had a radio station and the radio station was allowed to broadcast all day or it could broadcast just during part of the day. If it was allowed to do that, then could the state change how the radio station made that determination, the private radio station? They say you're allowed to do it, but we want you to decide that using your board of directors rather than using your – rather than referring it to a shareholder's committee. Right, so to make sure I understand this, the SEC would allow a radio station to broadcast either all day or part of the day. Right. Or it would allow them to broadcast far or broadcast – gave them that choice. Right, right. But now if they did, why shouldn't they give the same choice to a county that runs a radio station? Right, right. I appreciate the distinction between sort of a restriction and – It seems to me if they say anybody who runs a radio station has to have a certain type of frequency. Right. Can't broadcast in a different kind of frequency. Right. Then it would make sense that that would also apply to a state-run or a county-run radio station. Right. And the state could circumvent that requirement by saying our radio stations will violate that or our county radio stations will violate that. Right. I can see that that would be a problem. Sure. Okay. What I have trouble with is saying you are allowed to do – you – private broadbands can either be within a county or you can expand without a county. We're not requiring you to expand to statewide. Right. You can do one or the other. Right. Now state – I'm sorry – county-run institutions ought to have the same kind of discretion and presumably do. But what you seem to be trying to do is interfere with the state's ability to tell the localities how to exercise discretion that the FCC gives. When you're doing that, I don't see how there's communication policy. It seems more like decision-making policy because they're allowed to make the decision. Right. If they were private, they could make the decision. The state as a whole could make the decision. Right. But you're – it seems very much like you're interfering with the way the state structures its decision-making authority to exercise discretionary determinations. How is it not that? So you began by saying it's difficult to tell a difference between whether and how, and it's difficult to second-guess why a legislature does something. Right. But I don't see – if you say that we don't allow you to interfere with judgments that are discretionary for licensees, that's an easy line to draw. You make the – the state decides how these licensees make their discretionary decisions. It doesn't decide how they make their non-discretionary decisions. It's an easy one. It's not difficult. You don't have to get into the purposes of the legislature. You just say, is this something the FCC allows the regulated party to do? And you've got to admit, don't you, that if Wilson or Chattanooga didn't want to expand, you aren't forcing them to expand, are you? I'd be sure we're not, no. Well, so if you're not, where's the policy? You're just – instead of saying we demand that you expand, you're saying we demand that the city rather than the state decide whether we expand. That doesn't sound like deciding whether you expand. It sounds like deciding who makes the decision when you give the decision to the regulated party. That's the trouble I'm having with your decision. Right. So in this case, the state has made the decision that cities may enter this market. Yeah, but not do the things that you want to allow them to do. Well, for example, there's in North Carolina a requirement that cities set prices at a certain rate. Is that – would the entity be allowed to set prices at that rate if the state didn't force them? Would they, in their discretion, would they do that? There is very little regulation of the price of the product. So these are decisions that are not – you don't care enough to require that they do certain things. You just want the city to have the power to make that decision rather than the state. Well, because the – excuse me. Even in the areas where private entities make the decisions, the FCC still has a policy interest in ensuring broad rollout. And so, for example, if – You don't require it. Well, in some ways we do. For example, you're using the broadcast example. When the broadcast spectrum is limited and when someone gets a license, they have to use that a certain amount of hours of the day in discretion but not limited because the FCC doesn't. If you could show that was going on here, it would seem to me you would have a much smarter decision. That's not what your opinion, what your FCC says is that this is something we require of everybody, and the state is trying to exempt itself from across the board communications-related requirements. I mean, to start here, you just conceded that most of these things the city could decline to do if it was so inclined. The city could decline to do it, but the – You agree that the city could decline to do all of these things that you say the state must let it do. Yes, Your Honor, because the state – I don't see how that doesn't concede your case away. Well, because we think that the purpose is important. Because whether or not this – Sorry, the purpose and effect, I should say. Whether or not federal law trumps state law has to do with whether it's a matter of sovereign discretion or whether or not it's a matter of telecommunications policy where federal law reigns supreme. What if the city decides not to do it for bad reasons? The city can do that, right? You just said so. Well, that's right, Your Honor. Basically, what you're doing is deciding who makes this discretionary decision whether to exempt. They don't have to expand under FCC communication policy. You just said that. They just have to be able to expand if they want to, even though the state doesn't. That sounds like – I think that gets at the structure of government rather than FCC policy. Well, the structure of government here – I think it's disingenuous to characterize the rate at which a provider may set its prices as a sovereign exercise of discretion of whether or not the city can do something. It's just saying, well, you can do this, but you must do it in a certain way. Well, I'm saying whether they can do it under FCC policy. If the city could do it under FCC policy, have the discretion to do it under FCC policy, I don't see how you can then say that you can deprive the state from telling the city how to exercise its permitted discretion under FCC policy. That sounds like – we could draw a very clear, bright line. We'd have to get into the purposes of the legislature or the purposes of the city. You either allow it or you don't. If you do allow it for the city to do, or not do, why can't you allow the state to tell it not to do it? Right, so you're – here, again, I think if we look at the facts on the ground, we'll see that these cities are willing, ready, and able to spread out. The hypothetical is what if they weren't? If they weren't, you are not forcing them to, right? No, we wouldn't be, but the FCC – So basically you're making a decision as to who decides. I think that – I want to make sure I'm understanding what you're saying. I think that Judge Rogers is talking about the unitary nature of the state, that there's the state government and the city government's really the same thing because of the power of the state. And so what he's trying to make the point, I think, that you're really just affecting who makes the decision because it's all delegated state in part. And I think what you're saying is that you see a barrier erected by the state and the city wants to do something that the state has allowed it to do a little bit, but not more, and you see your authority in removing barriers as removing the state's denial to the city of the power to make that decision. I think that's right. I would just make two points. One, I guess I would challenge the characterization of this as allowing cities to do some but not a lot because setting a rate, for example, doesn't seem to me to be fairly characterized as withholding authority. It seems to be regulating the manner. But in North Carolina, the cities have to charge a certain rate. This is supposed to protect incumbents from rising competition. So I don't think that's fairly characterized as delegating authority to the city. Do you control that rate? Could they set the rate that the state is forcing them to set on their own? Yes. So this is going back to your point about whether or not there's any difference about the unitary executive, as Ron put it. In this case, Chattanooga is a humble city and could make this decision by a further preemptive law. And in North Carolina, under existing laws and supervised courts, Wilson would have been able to provide people with these restrictions. So in a sense, except for these competition laws that issue here, the city has already made the decision about authority and granted authority and allocated authority between itself and subdivisions. So the only question is whether it can affect that balance purely for the purposes of regulating competition in the interstate market. But the city could decline to do it purely for non-FCC purposes. It could just be the city could just have a weird electorate and we want to keep this broadband to ourselves. It could, Your Honor. Again, I think if we look at what's going on here, that's the amount of time. No, I understand that's not what's going on, but we're talking about constitutional principles. Well, I understand. Statements and so forth. Right, I understand we should be talking primarily about statutory interpretation rather than constitutional principles, although they're certainly animated by constitutional principles. But I guess what I'm being more precise and I'm talking about when the Third Statement Rule applies. It seems to me the Third Statement Rule would apply when you are talking about having a limitation on the state's ability to tell cities how to exercise the discretion that's permitted by the FCC. But if you just end up, and you've said that the discretion in this case is permitted by the FCC. If the city wanted to do what the state is telling it to do, you would have no problem. There's no doubt that the policy that the state is setting in place conflicts with the federal policy. Well, but it's not if. What if the city did it for the same reason? You would allow it, right? Right, so again. So that suggests to me that all you're regulating is who makes that discretion, not whether the discretion could be exercised. If you said no licensee can do this, then I would have a real problem, under State Rule or not, with the state saying you have to do what the FCC says you can't do. That would be problematic, right? But to say you have to do what the FCC gives you the choice whether to do or not, that seems like you're affecting the decision-making. That's true, but here, they do bleed into one another, and if the city wants to do this, but for the state restrictions. The city certainly has the powers that are given to it by the state. Right, but yet it has given the power to by-law. And then it's taken it away. It's given part of the power, and it's qualified part of the power, and it's done this and it's done that. As long as what they're doing is telling them how many decisions that the FCC permits, I don't see how that's anything but deciding how much power goes to its political subdivisions. Right, not to beat a dead horse on the amount of time. Okay, that's a good question. I'd like to know where the plain statement is. So, again, Your Honor, in the order, the way the FCC understands the law in this framework, the plain statement doesn't apply because it's not an issue of historical least powers of states. It's a matter of regulation of interstate competition. And so, as the FCC understands it, we're not looking for a plain statement of creative power. So you think Nixon just doesn't apply at all? I think there's a very important distinction that if Nixon, what was at issue was undoubtedly the power to grant full authority. Can the city do this? As opposed to regulating how the city did it once it was authorized. But in the discussion of the dissent, there's a discussion that those lines just don't work because then you say that once the state's granted the power, they can never be moved. In the majority's response to the dissent, there's a discussion about how that kind of logic just doesn't work. Oh, in Nixon, I'm sorry, yeah, right. Well, it's not, so none of those seem to, those problems discussed in the main, the main majority opinion in Nixon through a lot of problems, because it was about an on-off switch. Can you do this? It might be that if under, so the problem there was if granted, could the power be taken away? But here the FCC said it's a very different question about whether or not it could preempt a state law which would tell the power altogether. So too, it would be a different question about whether it could then preempt a law that withdrew power. So if tomorrow North Carolina said, you know what, exchange your mind, no city can provide any kind of broadband, that would certainly present a very different posture than the one here. But if, it seems to me, I mean, you can call it what you want, but if you have a rule that says that cities can provide a service only in their geographical borders, that seems a lot like the, how you regulate your subdivisions and not how you regulate broadband. It would in many cases. I think it's important to look at these two laws. So again, in Tennessee, the city built a statewide network and provide phone service over the network. The only question is whether it can utilize an existing network, an authorized network to compete. So too in Wilson, Greenlight provides electric service in I believe six counties and has fiber in many of those areas but can only use the fiber to provide broadband within the bounds of Wilson County. So again, if you look at the way the laws actually operate, they look a lot less like, for example, allocating authority, protecting against suspending or protecting against intruding into surrounding areas. It looks a lot more like guarding against competition. So again, this is a recent attempt to explain, I think looking at the particular laws in question, since it's an adjudication of two laws only, it's very helpful here. So there might be more difficult questions in the future or it might be presented differently. So does your ruling just have the effect of saying that where the municipalities already provides the other services, you can't limit the broadband or? No, you're right. It goes further. No, it does go further. But I think my point was that if you look at the facts and the way the law operates in this instance, it elucidates what the law is actually doing, which is regulating competition as opposed to withholding authority, for example. I have one more question. I know this is your time. Well, it's your time to answer my question. I want to ask a question. It may be about the relationship between you and the other party. I guess the United States is a party as well as the FCC and the Solicitor General gets to make decisions. If my question gets into stuff that you're just not comfortable talking about, just say so. That's fine. I'm not sure it's related to how we would decide, but I am curious. Both you and the FCC represent the FCC. We represent the FCC. They don't have independent litigating authority. We do. You do have independent litigating authority. That's right. If you lose this case, speak hypothetically, and you want to take it to the Supreme Court, you wouldn't have to get permission from the Solicitor General to take it to the Supreme Court. You could take it on your own to the Supreme Court. You're getting into interesting and difficult questions of interagency authority. My understanding, and here I'm just speaking as my own personal understanding, is out of it. You don't know. No, that's not true. My bosses are smarter and more experienced than I am. But I say that only because that's what they say. My understanding is, in the past, there have been occasions when the United States did not choose to go for certiorari and the FCC was able to do it independently and, in fact, argued a case. Did. Did. I know TVA can and some of these other agencies can't. It depends on how the statute is put together. That's right. But right now, if we were to rule in your favor, we have no assurance, no even tentative assurance, that the Solicitor General would have taken a different position and not defend your position in the Supreme Court. Right. We have no particular information about what position the Solicitor General would take. Oh, okay. Thank you. Thank you, Your Honor. Happy to sign your papers. Thank you. Your Honor, it's just a couple of points in conclusion. I think you're right to focus on Nixon and you're right to focus on some of the results, the strange and indeterminate results that might result from the FCC's decision here. In fact, I think if you look at Nixon, some of the questions that Your Honors are asking are actually addressed in the opinion. If you look particularly at page 136, they talk about a utility that is generally authorized to provide services but is restrained from providing telecommunications services by a specific statute. And that hypothetical is one of the quote-unquote strange and indeterminate results that really troubles the Court. It says, we don't like the idea that a general rule of preemption is going to, that the application of a general rule of preemption is going to differ depending on the laws of the states involved. And that's one of the things, the thicket that makes us think that a clear statement is necessary, that Congress really wants, we need to be sure that Congress wants us to drive into that area before we take that step. It seems to me the intent is clear, I mean, they want everybody to have broadband. And if it turns out that the SEC determines that there are barriers and that there are areas that aren't being served, they want them to remove the barriers and do whatever they can to get the broadband out there. So if you have a situation where one of the providers, or one of the major providers of broadband is a municipal provider, and the state restricts that provider or the state decides that it wants, it's more interested in leveling the playing field or whatever it is than getting broadband to people, you have this congressional statement that says that this is more important. We feel that access to broadband affects education, affects core interests, and we want barriers removed. So why isn't that exactly what they're doing? You have a provider, you have a wasteland, and the provider wants it, the people want it, and the state is just in this effort to, I don't know, level the playing field, not whatever, is restricting an ability that is already given to municipalities. So why is that about the state regulating its subdivisions as opposed to the state addressing competition in this area? So a few points of response, Your Honor. First of all, I would challenge the idea that there's any clear statement in Section 706. I don't think even the FCC, and I think counsel here, conceded that there is not. And if you look at Section 253, which is the statute that was issued in Nixon, Section 253 is also a very powerful statement of congressional interest in making sure that people have access to telecommunications service, and it specifically discusses preemption. It talks about preemption. There's no similar reference in Section 706. So if Section 253 is not enough to clear the clear statement bar, there's no way that Section 706 can be. But what do you say that they can't preempt? They can't preempt state laws in general? Well, so two points. I would say, and our brief argues, that Section 706 doesn't provide any authority to the agency at all. Section 706 really should best be understood as a congressional policy statement to use the other authority that the Commission has granted elsewhere in the Code, and the Commission has a lot of authority in the Communications Act, separate apart from Section 706. But if you read Section 706 the way the Commission does, we have the ability, and indeed we're mandated, to do anything at all, as long as we're convinced that it will promote broadband deployment. That is a very strange grant of authority. It's extremely broad, and it's unlike anything else the Commission has the power to do. And I would challenge that it makes... No, I don't think so, Your Honor. I think my reading is... And in fact, if you look at the legislative history of Section 706 and where it came up, Section 706 directs the Commission... I mean, it's a policy statement. It says, you, Commission, should do what you can within the authority that we've granted you elsewhere to make sure that broadband is being deployed reasonably. That's it. You should do what you can to remove barriers, but it doesn't grant them unlimited power to remove barriers. And, Your Honor, I would say if you look at what the FCC is claiming, they have basically claimed limitless authority. I understand. I mean, that's a... I understand it's sort of, you know, one side says it means everything, and the other side says it means not nothing. It means... Nothing with teeth. Nothing with... Well, but, Your Honor... I'm only answering out of time. Sure. My other question now is, isn't that inconsistent with what other circuits have said? They may not have adopted the FCC's position, but they've rejected your position, and it's just...it's auditory. The D.C. Circuit... The D.C. Circuit in the Verizon case did, but I would point out in that regard, Your Honor, that they relied on Sections... on Chevron Step 2 to do that. They said it's an ambiguous statute. It doesn't have a clear statement of one way or the other. And because the FCC... We're going to go ahead and listen to the FCC. That's a way of interpreting a statute. No, it is, but the important point is that if it's ambiguous, it can't also be a plain statement under Gregory. So if the FCC is right that Section 706 is subject to Chevron deference under Step 2 and is an ambiguous statute, they have conceded that it does not meet the Gregory test. Okay. Thank you. Thank you, Your Honor. Case... Case, thanks for your advocacy. Case will be submitted. Thank you. Please call the next case.